# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| **GREGORY TURNER,** | ) |
| **Plaintiff,** | ) |
| v. | ) Case No. 2:19-cv-02840-SHL-atc |
| **GREYHOUND LINES, INC.,** | ) |
| **Defendant.** | ) |

## REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS

Before the court by order of reference[1] is Defendant Greyhound Lines, Inc.'s ("Greyhound" or "Defendant") Motion to Dismiss filed on August 21, 2020. (ECF No. 31.) *Pro se* Plaintiff Gregory Turner filed a response on August 30, 2020. (ECF No. 32.) Greyhound did not file a reply. For the following reasons, it is recommended that the Motion to Dismiss be denied in its entirety.

## **PROPOSED FINDINGS OF FACT**

The following findings of fact are based on the allegations in Turner's original and amended complaints. (ECF Nos. 1 & 29.)[2] On December 6, 2019, Turner filed his lawsuit

---

[1] Pursuant to Administrative Order No. 2013-05, this case has been referred to the United States magistrate judge for management and for all pretrial matters for determination or report and recommendation, as appropriate.

[2] On June 9, 2020, Greyhound filed a Motion to Dismiss Mr. Turner's original complaint. (ECF No. 23.) After the Court granted Mr. Turner leave to file an amended complaint (ECF No. 27), he did so on August 7, 2020 (ECF No. 29). Typically, "when plaintiff files [an] amended complaint, [the] new complaint supersedes all previous complaints and controls [the] case from that point forward." *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 306 (6th Cir. 2000) (citing *In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000)). Nevertheless, based on

against Greyhound, alleging violations of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12112–12117, as amended by the ADA Amendments Act of 2008 and the Civil Rights Act of 1990 (the "ADA"). (ECF No. 1, at 1.) In his court-provided complaint form, Turner alleges that he was seeking a position as a bus driver with Greyhound. (*Id.* at 4.) Turner checked the boxes on the form that alleged that Greyhound's discriminatory conduct included a failure to hire; failure to accommodate his disability; unequal terms and conditions of his employment; and retaliation. (*Id.* at 3.) He further alleges that the discriminatory acts occurred in September and October 2018, and he also asserts they are ongoing. (*Id.*)

In his original complaint, Turner alleges that, during his training, the company's trainer engaged in bullying, intimidation, and threats while he and others were at a hotel in Gurnee, Illinois. (*Id.* at 4.) Turner further alleges that the trainer made derogatory statements about his disability and that management did not resolve the issue. (*Id.*) Turner asserts that Greyhound's retaliation and bullying tactics persisted when the company allowed him to return for additional training, once again in Gurnee, Illinois. (*Id.*)

---

the liberal pleading standard afforded *pro se* plaintiffs, the Court construes Turner's amendment, which does not clearly restate the claims from his original complaint, together with the original complaint in evaluating Greyhound's Motion. *See Minner v. Shelby Cnty. Gov't*, No. 2:17-cv-2714-JPM-cgc, 2018 WL 4762136, at *4 (W.D. Tenn. Oct. 2, 2018) (citing *Taylor-Merideth v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 3:16-cv-00612, 2017 WL 1164583, at *1 (M.D. Tenn. Mar. 28, 2017), for the proposition that "[i]t is apparent to the Court that [Plaintiff] Taylor-Merideth likely did not understand that her Amended Complaint would supersede the original Complaint, and that therefore she needed to re-allege the facts entitling her relief. . . . In light of the lenient standards afforded to *pro se* litigants at the pleading stage, the Court will construe the Complaints together rather than require additional amendment."); *Leggett v. W. Express Inc.*, No. 3:19-cv-00110, 2020 WL 1161974, at *1 n.1 (M.D. Tenn. Jan. 6, 2020), *report and recommendation adopted sub nom. Leggett v. W. Express Inc*, No. 3:19-cv-00110, 2020 WL 1158140 (M.D. Tenn. Mar. 10, 2020) (citations omitted) (same); *Burns v. Helper*, No. 3:18-CV-01231, 2019 WL 5987707, at *1 n.1 (M.D. Tenn. Oct. 24, 2019), *report and recommendation adopted*, No. 3:18-cv-01231, 2019 WL 5964546 (M.D. Tenn. Nov. 13, 2019) (same).

In Turner's amended complaint, he adds additional details to the allegations contained in his initial filing. (ECF No. 29.) These details include allegedly harassing comments made by a Greyhound employee referred to as "Mr. Grey." (*Id.*) The statements include, without limitation, Grey calling Turner a "punk," accusing Turner of "whimpering out on him," calling Turner "POP-PE," and using a "nasty tone of anger" while discussing Turner's claim "of being a school bus driver for three years." (*Id.* at 1.)

The amendment also alleges that Grey was aware of an incident in a hotel Turner and others were staying in during training, in which Turner's hearing loss and his hearing aids were discussed in a meeting. (*Id.* at 1–2.) Turner alleges that his bilateral hearing loss was discussed in the meeting and brought up to the instructors as if he could not hear, even though he never made such a statement. (*Id.* at 2.)

Turner's amendment includes an anecdote from November 1, 2018, where Grey instructed Turner to be the first driver as he and two other bus-driver trainees departed from Oklahoma City. (*Id.*) Turner sought instructions from Grey, but Turner did not understand the response because of a Plexiglass barrier between them and because Grey was loudly joking with the other trainees. (*Id.*) After a car nearly collided with the bus, Turner said Grey yelled at the top of his voice that Turner could not hear, that he needed to get out from behind the wheel, that he needed to put new batteries in his hearing aids, and that Turner was going to be removed "for failure to follow instructions." (*Id.*)

Upon his return to Memphis, Turner was not feeling well due to his major depression and severe anxiety. (*Id.*) On November 2, 2018, Turner contacted Tim Echoes, a Greyhound training supervisor. (*Id.* at 3.) Echoes insisted that Turner had quit the training program, while

3

Turner said he merely wanted to change trainers. (*Id.*) Nevertheless, Turner turned in his phone and all of his Greyhound training materials to Echoes. (*Id.*)

Turner reapplied for a position with Greyhound in March 2019. (*Id.*) After delays related to his DOT card, Turner eventually returned to Gurnee, Illinois, in June 2019 to begin training with Greyhound again. (*Id.*) That training was apparently short-lived, however, as Turner alleges he began being harassed about his sleep apnea and about the "setting of mirrors," and eventually was "put out of the training program and given a bus ticket back to Memphis." (*Id.*)

Based on Turner's allegations, the EEOC terminated the processing of Turner's charges and issued a notice of a right to sue on November 19, 2019. (ECF No. 1-1.)

## PROPOSED CONCLUSIONS OF LAW

### I.   Standard of Review for Failure to State a Claim

To determine whether Turner's complaint states a claim on which relief may be granted, the Court applies the standards under Federal Rule of Civil Procedure 12(b)(6), as articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). "Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted). The court "construes the complaint in a light most favorable to [the] plaintiff" and "accepts all factual allegations as true" to determine whether they plausibly suggest an entitlement to relief. *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012). Pleadings provide facial plausibility when they present "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Iqbal*, 556 U.S. at 678.  However, "pleadings that . . . are no more than conclusions[] are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief.  Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"[A] pleading filed *pro se* is to be liberally construed and held to less stringent standards than a pleading filed by counsel."  *Kondaur Capital Corp. v. Smith*, 802 F. App'x 938, 945 (6th Cir. 2020) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)); s*ee also Vandiver v. Vasbinder*, 416 F. App'x 560, 562 (6th Cir. 2011) (finding the less stringent standard applies to *pro se* complaints, "however inartfully pleaded").  Nevertheless, *pro se* litigants "are not exempt from the requirements of the Federal Rules of Civil Procedure." *Wright v. Penguin Random House*, 783 F. App'x 578, 581 (6th Cir. 2019) (citing *Fox v. Mich. State Police Dep't*, 173 F. App'x 372, 376 (6th Cir. 2006)); *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) ("[A] court cannot 'create a claim which a plaintiff has not spelled out in his pleading.'") (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants.  Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party.  While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

## II.     Turner's ADA Claims

Greyhound asserts that Turner has failed to state a claim for relief on any of the four grounds under the ADA for which he seeks relief, i.e., disability, harassment, retaliation, and failure to accommodate.  In his Response, Turner counters that (1) he is disabled under the ADA; (2) he is qualified to perform the essential functions of the job of bus driver either with or without accommodations; and (3) he was discriminated against because of his disability.  (ECF No. 32, at 1.)  He appears to also argue that his claims should not be dismissed because he is appropriately characterized as being "regarded as disabled" under U.S.C. § 102102(3)(A).  (*Id.* at 2–3.)  He asserts he was treated by others as having a substantially limiting impairment, which led to his being discriminated against, even though his disability did not prevent him from performing the job of bus driver.  (*Id.* at 2–3.)

### A.     Turner Has Adequately Stated a Claim for Disability Discrimination under the ADA.

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112.  "To recover on a claim for disability discrimination under the ADA, a plaintiff must show that he: (1) is disabled; (2) is otherwise qualified to perform the essential functions of the position, with or without accommodation; and (3) has suffered an adverse employment action because of his disability."  *Douglas v. Esper*, No. 2:18-cv-02420, 2020 WL 206936, at *3 (W.D. Tenn. Jan. 14, 2020) (citing *Ferrari v. Ford Motor Co.*, 826 F.3d 885, 891 (6th Cir. 2016)).

Defendant acknowledges that Turner's complaint need not plead specific facts that would establish a prima facie case of discrimination, but "instead must contain only 'a short and plain

6

statement of the claim showing that the pleader is entitled to relief.'" *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002) (quoting Fed. R. Civ. P. 8(a)(2)); *see also Bolden v. Lake Cnty. Bd. of Educ.*, No. 1:19-cv-01262-STA-jay, 2020 WL 1163938, at *2 (W.D. Tenn. Feb. 13, 2020), *report and recommendation adopted*, No. 1:19-cv-01262-STA-jay, 2020 WL 1159760 (W.D. Tenn. Mar. 10, 2020) (explaining that the "*prima facie* elements of employment discrimination claims are not pleading requirements" and "the analysis turns upon whether the plaintiff has provided sufficient factual content for the Court to be able to reasonably infer the alleged illegal discrimination occurred").

Greyhound also acknowledges that Turner has adequately alleged that he has a disability, i.e., severe hearing loss. (ECF No. 31-1, at 4); *see also* U.S.C. § 12102(2)(A) (explaining that the major life activities protected by the ADA, U.S.C. § 12102(1), include "hearing" and "communicating"). Greyhound's Motion to Dismiss does not suggest that Turner is not qualified to perform the essential functions of the position of bus driver, with or without accommodation. The lone argument Greyhound offers in support of dismissing Turner's disability discrimination claim is that he has failed to allege facts sufficient to establish that it took any adverse employment action against him based on his disability, or otherwise. (ECF No. 31-1, at 4–5.) More specifically, Greyhound denies that Turner's request for a new trainer was done to accommodate his disability or that Greyhound refused his request. (*Id.* at 5.) Moreover, Greyhound asserts that Turner did not check the box in his original complaint indicating Greyhound terminated his employment or that he was terminated because of an actual or

7

perceived disability. (*Id.*) Greyhound also offers the fact that it allowed Turner to return to training in June 2019 as evidence that it did not discriminate against him.[3] (*Id.*)

Contrary to Greyhound's contention, however, Turner not only alleges that he "requested for a new trainer" after Grey yelled at him at the top of his voice that Turner could not hear and that he needed to get out from behind the wheel, but also that he did so because he did not understand what Grey was saying. (ECF No. 29, at 2.) That allegation satisfies Turner's obligation to assert that he requested an accommodation and that the request was based upon his disability.

Accordingly, it is recommended that Greyhound's Motion to Dismiss Turner's claim for discrimination based on his disability be DENIED.

      **B.**      **Turner Has Adequately Stated a Claim for Harassment Under the ADA.**

To maintain an action for a hostile work environment under the ADA, the employee must demonstrate that: (1) he was disabled; (2) he was subject to unwelcome harassment; (3) the harassment was based on his disability; (4) the harassment unreasonably interfered with his work performance; and (5) the defendant either knew or should have known about the harassment and failed to take corrective measures. *Trepka v. Bd. of Educ.*, 28 F. App'x 455, 461 (6th Cir. 2002). In conducting its analysis, "[t]he court must look at the totality of the circumstances, considering the following factors: 'the frequency of the discriminatory conduct; its severity; whether it is

---

[3] The circumstances surrounding Turner's second training stint—and subsequent termination from it—are not clearly stated in either Turner's complaint or his amended complaint, beyond his allegations that his rehiring "was a ruse," as well as vague references that he was harassed about his sleep apnea and about the setting of his mirrors after he was rehired. (ECF No. 29, at 3.) Standing alone, Greyhound's alleged actions during Turner's second term of employment are insufficient to sustain his claims of discrimination. If, however, his rehiring was in fact a mere pretext, as he appears to allege in his amended complaint, it does not remedy the earlier actions Greyhound took against him.

physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Handshoe v. Mercy Med. Ctr.*, 34 F. App'x 441, 448 (6th Cir. 2002) (quoting *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir. 2000)). The Sixth Circuit Court of Appeals has explained that its "harassment jurisprudence requires that [it] distinguish between harassment and discriminatory harassment." *Id.* at 461 (citing *Bowman*, 220 F.3d at 464). "Thus, an employee must demonstrate that the allegedly harassing conduct was motivated by a bias towards the employee's protected class." *Id.* (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998)).

Greyhound is correct that, to the extent many of the actions Turner complains of amount to harassment, they cannot be said to be based on his disability, nor motivated by a bias toward those with hearing loss. These actions include the allegedly angry tone Greyhound's trainer used toward Turner regarding his work as a school bus driver and while offering instructions on the obstacle course, the trainer's allegedly boorish and generally aggressive demeanor toward Turner, the trainer's act of calling Turner "POP-PE," and vague references to harassment about Turner's sleep apnea. *See, e.g.*, *Wheeler v. Jackson Nat'l Life Ins. Co.*, 159 F. Supp. 3d 828, 860 (M.D. Tenn. 2016), *aff'd*, 666 F. App'x 453 (6th Cir. 2016) (collecting cases that did not rise to the level of sufficient severity to have created a hostile work environment).

Other statements Greyhound allegedly made do, however, support a claim of harassment based on Turner's disability. Defendant suggests that Turner makes a single, vague reference to an isolated statement made by Defendant that referenced his alleged disability, i.e., his supervisor's telling him that he can't hear and that he needed to put new batteries in his hearing aids. Defendant argues that such a statement lacks the severity and pervasiveness to sufficiently state a claim for harassment. Greyhound downplays both the pervasiveness and the severity of

9

Turner's claims of harassment. Loudly telling someone with hearing loss that that he "can't hear" and that "he need[s] to put new batteries in [his] hearing aids" (ECF No. 2, at 4) does not amount to a vague reference to his disability. Moreover, Defendant diminishes or ignores other alleged instances of harassment based on Turner's disability, including the trainer telling him he was going to remove him for failing to follow instructions after Turner asked him to repeat himself, and the discussions about Turner's hearing loss in a meeting as though he could not hear. (*Id.*) These explicit references to Turner's disability are at the core of his ADA claims, and he sufficiently alleges they permeated his work environment.

Given the alleged timing of the statements—including in the middle of training meetings and while Turner was driving a bus during his training—the statements can also be said to have interfered with Turner's work performance. Moreover, because they were allegedly made by Greyhound's trainer or those attending the training, the company either knew or should have known about the harassment and failed to take corrective measures.

For the foregoing reasons, it is recommended that Greyhound's Motion to Dismiss Turner's claim for harassment under the ADA be DENIED.

### C.     Turner Has Adequately Stated a Claim for Failure to Accommodate under the ADA.

To establish a case for failure to provide a reasonable accommodation, Turner must demonstrate that (1) he is disabled; (2) he is otherwise qualified for the position, with or without reasonable accommodation; (3) Greyhound was aware of his disability; (4) there was a causal relationship between the disability and his request for accommodation; and (5) Greyhound failed to provide a reasonable accommodation. *Gamble v. Sitel Operating Corp.*, No. 15-2789-SHL-dkv, 2016 WL 11480179, at *6 (W.D. Tenn. July 6, 2016), *report and recommendation adopted*, No. 15-CV-2789-SHL-dkv, 2016 WL 4435265 (W.D. Tenn. Aug. 22, 2016). "Plainly,

a discrimination claim premised on a failure to accommodate cannot exist unless a plaintiff actually requests an accommodation." *Sorey v. YRC Inc.*, No. 3:11-cv-0859, 2012 WL 5865369, at *6 (M.D. Tenn. Nov. 19, 2012) (citing *Gaines v. Runyon*, 107 F.3d 1171, 1175 (6th Cir. 1997); *Leeds v. Potter*, 249 F. App'x 442, 449 (6th Cir. 2007)). The obligation to make that request fell upon Turner here, as "the employee also bears the burden of proposing reasonable accommodations; an employee's claim must be dismissed if the employee fails to identify and request such reasonable accommodations." *Reed v. FedEx Corp. Servs., Inc.*, No. 2:18-cv-02503-JPM-cgc, 2020 WL 1034623, at *14 (W.D. Tenn. Mar. 3, 2020) (quoting *Johnson v. Cleveland City Sch. Dist.*, 443 F. App'x 974, 983 (6th Cir. 2011)).

Turner's complaint and amended complaint clearly satisfy the first three elements of a claim for failure to accommodate. First, as explained above, Turner's hearing loss qualifies as a disability under the ADA. Second, a liberal reading of Turner's complaint and amended complaint demonstrates that he also has alleged that he is otherwise qualified for the position. Finally, Turner clearly alleges that Greyhound was aware of his hearing loss.

The fourth prong presents a closer call, but, when reading Turner's complaint and amended complaint liberally, they sufficiently allege that he requested an accommodation for his hearing loss from Greyhound.[4] The Sixth Circuit Court of Appeals "require[s] plaintiffs not only to request to be accommodated, but to also provide their employers with a sufficient basis to understand that the request is being made because of their disability." *Deister v. Auto Club Ins.*

---

[4] Defendant is correct that, to the extent that Turner has asserted Greyhound failed to accommodate his disabilities of sleep apnea, major depression, or severe anxiety, those claims fail. While Turner alleges that Greyhound was aware of his sleep apnea, he fails to allege that he requested an accommodation related to that disability or that Greyhound failed to provide it. Regarding his major depression and anxiety, Turner fails to allege that Greyhound was aware of those disabilities, let alone that he requested an accommodation related to them, or that Greyhound failed to provide such an accommodation.

*Ass'n*, 647 F. App'x 652, 658 (6th Cir. 2016). As explained above, Turner's request for a new trainer following Grey's yelling at him at the top of his voice was a request for accommodation that could be said to have been sufficiently based upon his disability.

Whether Turner's accommodation request was reasonable presents a similarly close call, but one that ultimately is best determined outside of the context of a motion to dismiss. "[R]easonableness of an accommodation under the ADA is a question of fact appropriate for resolution by the trier of fact and not by the Court on a motion under Fed. R. Civ. P. 12(b)(6)." *Niece v. Fitzner*, 922 F. Supp. 1208, 1218 (E.D. Mich. 1996); *see also Tuck v. HCA Health Servs. of Tenn., Inc.*, 7 F.3d 465, 471 (6th Cir. 1993) (explaining that reasonable accommodation issues under the Rehabilitation Act[5] are primarily factual); *Blair v. SUNY Univ. at Buffalo*, No. 17-cv-1317S, 2020 WL 695870, at *6 (W.D.N.Y. Feb. 11, 2020) (finding that the reasonableness of an accommodation under the Rehabilitation Act "is a question of fact, not of law, and must be determined by examining the context and nature of the request").

Turner's request for a new trainer could be said to be analogous to an employee's request for a new supervisor in the context of accommodation claims. The Sixth Circuit, relying in part upon EEOC guidance, has held that "there operates a 'presumption . . . that a request to change supervisors is unreasonable, and the burden of overcoming that presumption (i.e., of

---

[5] Claims under the Rehabilitation Act are generally reviewed under the same standard as claims under the ADA, including for determinations as to whether an accommodation is reasonable. *See Babcock v. Michigan*, 812 F.3d 531, 540 (6th Cir. 2016) (explaining that an "analysis of Rehabilitation Act claims 'roughly parallels' ADA claims because the statutes contain similar language and are 'quite similar in purpose and scope'") (quoting *McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 459–60 (6th Cir. 1997)); *Shaikh v. Lincoln Mem'l Univ.*, 608 F. App'x 349, 353 (6th Cir. 2015) ("Claims brought under the Rehabilitation Act are generally reviewed under the same standards that govern ADA claims."); *Thompson v. Williamson Cnty., Tenn.*, 219 F.3d 555, 557 n.3 (6th Cir. 2000) ("Because the ADA sets forth the same remedies, procedures, and rights as the Rehabilitation Act, claims brought under both statutes may be analyzed together.").

12

demonstrating that, within the particular context of plaintiff's workplace, the request was reasonable) therefore lies with the plaintiff.'" *Reed*, 2020 WL 1034623, at *15 (W.D. Tenn. Mar. 3, 2020) (quoting *Cardenas-Meade v. Pfizer, Inc.*, 510 F. App'x 367, 372 (6th Cir. 2013)); *see also* EEOC Enforcement Guidance on Reasonable Accommodation and Undue Hardship under the Americans with Disabilities Act, EEOC Notice No. 915.002 (Oct. 17, 2002), Answer to Question 33, https://www.eeoc.gov/laws/guidance/enforcement-guidance-reasonable-accommodation-and-undue-hardship-under-ada#reassignment ("An employer does not have to provide an employee with a new supervisor as a reasonable accommodation."). Ultimately, while the court in *Cardenas-Meade* did not reach the issue of whether a request for a re-assignment to a different supervisor was reasonable, it found that such a determination must be made on a case-by-case basis. 510 F. App'x at 372.

The question of whether Greyhound's fulfillment of Turner's request for a new trainer would outweigh the associated administrative costs illustrates the challenge that accompanies answering such a question at the motion to dismiss stage, as the *Niece* court identified. Greyhound may have had many trainers at its disposal in Oklahoma City in November 2018. Whether it did, however, is not clear based on the record. Because it is not, the reasonableness of Turner's request cannot be determined on the pleadings alone. When Turner's complaint and amended complaint are construed in the light most favorable to him and the reasonable inferences are drawn in his favor, he has stated a claim that Greyhound failed to accommodate his hearing disability.

For the foregoing reasons, it is recommended that Greyhound's Motion to Dismiss be DENIED as to Turner's claims for failure to accommodate.

### D. Turner Has Adequately Stated a Claim for Retaliation under the ADA.

The ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). "To prevail on a claim for retaliation under the ADA or Rehabilitation Act, a plaintiff must show '(1) that he engaged in protected activity; (2) that he suffered adverse employment action; and (3) that a causal connection existed between the protected activity and the adverse action.'" *Johnson v. Peake*, 755 F. Supp. 2d 888, 897–98 (W.D. Tenn. 2010) (quoting *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 814 (6th Cir. 1999)). "Establishing a prima facie case of retaliation is a 'low hurdle.'" *Wallace v. Edward W. Sparrow Hosp. Ass'n*, 782 F. App'x 395, 407 (6th Cir. 2019) (quoting *Gribcheck v. Runyon*, 245 F.3d 547, 551 (6th Cir. 2001)).

As explained supra, Section II.A, Turner has adequately pled that he engaged in a protected activity, i.e., he requested an accommodation in the form of a different trainer. When read liberally, his complaint and amended complaint also assert that he suffered an adverse employment action and that a causal connection existed between the protected activity and the adverse action taken against him.

As to the adverse employment action, Turner asserts that, upon his return to Memphis in November 2018, he met with Greyhound supervisor Tim Echoes and informed Echoes that he did not quit the training program, but merely requested a different trainer. (ECF No. 29, at 3.) Turner alleges that Echoes refused to listen to him and demanded that he return all of Greyhound's materials, which Turner did. (*Id.*) This action, whether construed as a failure to hire or a termination, qualifies as an adverse employment action. *See Herring v. City of*

14

*Memphis*, No. 16-2995-SHL-dkv, 2017 WL 3025560, at *4 (W.D. Tenn. July 17, 2017) ("An adverse employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.") (quoting *Freeman v. Potter*, 200 F. App'x 439, 442 (6th Cir. 2006) (internal quotations omitted)).

Turner has also pled that there is a causal connection between the protected activity and the adverse employment action. "To establish a causal connection, Plaintiff must proffer evidence sufficient to raise the inference that [his] protected activity was the likely reason for the adverse action." *Spengler v. Worthington Cylinders*, 615 F.3d 481, 493 (6th Cir. 2010) (citations and quotations omitted). "In some circumstances, an inference of causation may arise solely from the closeness in time between the point at which an employer learns of an employee's protected activity and the point at which it takes an adverse action against that employee." *Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Sch.*, 974 F.3d 652, 664 (6th Cir. 2020) (citing *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 379, 381 (6th Cir. 2002)).

Here, the day after Turner alleges that Grey yelled at him that he could not hear and that he needed to get out from behind the wheel and Turner requested a different trainer, Greyhound terminated or failed to hire him. As alleged, Turner even pointed out his request for a different trainer to Echoes on the same day that Echoes demanded he return all of Greyhound's training materials. This situation is not like *Reed*, in which the court granted summary judgment to the defendant after finding that the plaintiff relied primarily on temporal proximity and his own belief about the defendant's motivation for its decisions. 2020 WL 1034623, at *12 (W.D. Tenn. Mar. 3, 2020). Here, there is not only a temporal proximity between Turner's alleged protected

15

activity and adverse action, but also the statements and actions of Greyhound's employees that supports an inference of the causal link.

Because Turner has sufficiently alleged that he engaged in protected activity, that he suffered adverse employment action, and that there was a causal connection between them, it is recommended that Greyhound's Motion to Dismiss Turner's claim for retaliation under the ADA be DENIED.

## **RECOMMENDATION**

For the foregoing reasons, it is recommended that Greyhound's Motion to Dismiss Turner's claims under the ADA be DENIED in its entirety.

Respectfully submitted this 30th day of October, 2020.

s/Annie T. Christoff
ANNIE T. CHRISTOFF
UNITED STATES MAGISTRATE JUDGE

## **NOTICE**

Within fourteen (14) days after being served with a copy of this report and recommendation disposition, a party may serve and file written objections to the proposed findings and recommendations. A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Failure to file objections within fourteen (14) days may constitute waiver of objections, exceptions, and further appeal.